Good morning, Your Honor. May it please the Court, Brian Layton on behalf of the appellants Marvin and Laura Horne et al. They are raisin producers down in the Fresno area of California. It's kind of a peculiar case only because the agency that controlled the service of process in this matter is the same agency who is basically the defendant, the same agency who put in the regulations, the same agency that claims that my clients are handlers unless subject to the marketing order, and employed by the same agency as a judicial officer who declared that unless my clients admit that they are raisin handlers, they have no administrative petition rights. The hearing clerk's office who allegedly mailed out something to my office via certified mail on February 4th is also employed by USDA. So you have an entire agency with a $135 billion budget and 110,000 employees use the most obscure Pony Express mail system in the world to give me notice that 20 days from the date of decision I have to file a complaint in district court. It never arrived to me, never arrived to co-counsel Mr. Domina down in Nebraska. What they did is when they received it back, knowing that the clock was ticking on my 20 days, they just put it in regular mail in a shredded condition. That is a service we get from USDA, and they gleefully celebrated their victory down below and before the judicial officer. The judicial officer basically thumbed his nose at this court's prior decision in Midway Farms. There, Midway Farms was accused by the Raisin Administrative Committee and USDA of not complying with the raisin marketing order. Midway claimed it was not a handler subject to the raisin marketing order. It was simply a producer who was not regulated by the marketing order, but it was intended to be protected by the marketing order. Midway filed an administrative petition because they were claiming he had to file records reports, keep his reserves separated, pay assessments, etc. He filed an administrative petition saying he's not a handler. The judicial officer, same judicial officer as in this case, same judicial officer who's never ruled in favor of a petitioner in the 46 years since the administrative petition proceedings have begun, in 1946, actually 64 years, ruled that unless Midway admits that it's a handler, it has no administrative rights. We then went into the district court. The district court agreed with the judicial officer, and this court reversed and says, wait a minute, a handler for purposes of Rule 608C.15a of the 7 U.S.C. says that it's either a handler or someone to whom a marketing order is attempted to be made applicable. The same thing is happening with my clients who are attempting to make the marketing order applicable to my clients saying that they are handlers subject to the marketing order. We say we're not. Now, is that being litigated in a separate proceeding as to whether you're a handler or not? They won't allow us to litigate that in the separate proceedings. They have sued us in the USDA courts for not complying with reserve requirements. There's another case pending here where the same administrative law judge and the judicial officer imposed penalties of almost $1 million on my clients for not complying with the marketing order. During the pendency of that, we filed this administrative petition challenging or asserting we are not handlers. When they charge us pursuant to 608C.14a, we cannot contest the validity of any provisions of the marketing order. As petitioners, we can. The same judicial officer that imposed penalties of almost $1 million on us is the same judge that says you have to admit you're handlers or you're not you don't get the immunity provisions of 608C.15a. I am kicking you out of my court. I think I missed something here.  He said you can challenge the order as petitioners. Does that mean the proceeding that we're... Yes. If you got to the merits of the proceeding, the proceeding we're here on today? When you are an administrative petitioner, like we attempted to be in this case, you can challenge raise in marketing order regulations. You can challenge that they cannot be applicable to your type of conduct. You can challenge the fact that they didn't either comply with rulemaking or that they do not comply or are contrary to the Agricultural Marketing Agreement Act, which begot the raise in marketing order. You can attack various things in an affirmative way. When you are a defendant in one of the USDA proceedings under 14a, you cannot challenge based upon any affirmative defenses whatsoever. All you can say is we didn't do it. And why is that? Because the statute says that. And the regulations say that. But 14a, Congress took into account in 14a that the penalties cannot be imposed upon you. You are immune from those penalties if during the pendency you have filed an administrative petition in good faith challenging the regulations about which the issue is about. That's what we were trying to do. If my clients were regular handlers, such as this court has dealt with probably on 35 occasions, probably most of mine since 1986, where it's handlers challenging regulations through 15a proceedings, while that challenge is going on, you're immune from any of their 5,000-a-day penalties for alleged violations, including holding reserves, et cetera. And it's a way to put at issue before the USDA courts, which always fail, but then finally in the district courts and finally before your honors, showing that the conduct of my clients are inconsistent with what the Agricultural Marketing Agreement Act was attempting to regulate. They, in fact, said producers are not regulated. Handlers are. The judicial officer is saying you have to admit you're a handler or you can't challenge. But at the same token, that same judicial officer feels proud that he can impose a million dollars of penalties on my same client saying that you're acting like a handler, but won't allow us to challenge the whole idea of that or his construction of the regulation is contrary to the Agricultural Marketing Agreement Act. Let's get back to this little trouble about the time of filing. Did you receive it before the 20 days was up? Nope. Received it March 4th. And that when should you have received it to be timely? Well, February 4th is the date of the ruling. I had until February 24th to file a complaint. It says a bill of equity, but it's a complaint in district court. And you didn't get it, no notice until after? Yes. Okay. And then USDA gets this original certified mail back sometime, whether it's before the 20 days expires or after the 20 days expires. They don't notify me. They just put this torn up in three pieces in an envelope and sends it back to me dated April, I mean dated February 28th, which is 24 days after the decision was rendered. No phone call. Mr. Domina didn't get his until May 8th, I mean March 8th. Now, I sent a 28-J letter in yesterday regarding Jones v. Flowers, which goes into detail about what is reasonable notice, and most of the time certified mail is reasonable notice. But it also says reasonable notice is a person's due, D-U-E. The means employed must be such as the decision of a desirous of actually informing the absentee might reasonably adopt to accomplish it. And it says that you must take into consideration all the facts and circumstances giving rise to the notice. If you know someone doesn't live in an address, for example, you don't send a certified mail to that address. In this case, while certified mail might most of the time get there, even if it did, in the certified mail's timeliness, I'm already eight to nine days into this 20-day clock when I received it. The problem that I have with USDA is I've had probably at least 40 cases in front of them. They have phoned my office. They've faxed me things. They've e-mailed me things. I have faxed them things. You get a decision on February 4th. You know my clock is 20 days. You know snail mail, certified mail, is going to take up seven or eight days of that. Fax it to me. It is, you know, some of these cases say, well, the most efficient taking into account the expense. Fax is cheaper than certified mail. Now, is there any reason why you didn't get the certified mail? From what I understand, after speaking to various people, is in the USDA mail room, it goes in there and they do certain sorting things. Sometimes their knives open the envelope and they get mutilated and they just still go out. But it was delivered to the United States Post Office to deliver certified mail to you. Was your address there? Does your office not accept certified mail, or what's going on? I have gotten probably no less than 100 things, certified mail, at my office from USDA. I am downtown Clovis. And I don't know if you know downtown Clovis. Everybody knows everybody. All the postal carriers know my office. I've been there for 17 years. Our office accepts all mail, certified mail, et cetera. We have gotten certified mail when somebody hasn't been there, like over the lunch hour. They give us a little yellow card or a green card. And I either go down to the post office or one of my secretaries do. One's been with me 19 years, the other 16 years. We all deal with USDA hearing clerk's offices. We have never had one that was returned unclaimed. When I received Mr. Vail's declaration, who works in the general counsel's office at USDA, that it was sent out and did go to the post office, et cetera, I went down to the Clovis post office with their file stamp documents and asked the postmaster, and he says it never came to the Clovis office. Never got to the Clovis post office because this is what we do. We log it in saying this is the day we got it. We log it in when we try to serve it. If you're not there, we have three more attempts to serve it before it ever goes back. Mr. Layton, we know you. We wouldn't send it back. He says so. It never got here. It does show that it arrived back at the USDA building on the 27th of February, based upon keeping track of the certified mail. And they just put it in a regular envelope, sent it out the next day.  Now, Judge Wanger, I don't know what to say. It kind of makes me laugh sometimes, but it's so sad in this case because we're talking about a jurisdictional issue that goes to the heart of whether or not we have immunity from a million dollars' worth of penalties, and we have a right to our day in court with USDA, followed up by the district court, or we don't, and Judge Wanger says, I should have just called them all the time. They don't have an electronic filing system. They don't post things on their website. There's no way you can do anything except you call them all the time. And I don't believe that that is reasonable notice taking into consideration the special circumstances, the fact that they know me, the fact that I've had the same fax number for 17 years, I've been at the same address 17 years, they have faxed me things before, they've emailed me things before, which is a lot cheaper than certified mail. And when you have a 20-day jurisdictional fuse, I think it is totally unreasonable to continue with the certified mail. I then filed an administrative petition, which I sent you a 28-J letter back in November, asking for rulemaking to change the rules. To make it available and do it by fax or certified mail, what they came back with is their answer denying rulemaking in the matter, saying, well, Judge Wanger says that our method of service is reasonable. So this is what we get out of the USDA court. And the problem is the one that suffers are my clients who are trying to get a decision through the real courts as to whether or not they're subject to the marketing order. Is what they're doing constitute being a handler subject to the marketing order first, and if it's subject to the marketing order, whether or not it's even consistent with the Agricultural Marketing Agreement Act? So I would like to preserve what little time I have left for rebuttal, if you may. And we'll hear from the Department of Agriculture. Good morning. Benjamin Hall, Assistant United States Attorney on behalf of the Secretary of Agriculture. Appellants spent much of their time this morning arguing the merits of the underlying administrative petition, which is not before this Court. Let's get right to what's wrong with the notice. Yes. And what we have here is here's what we know about the notice. On February 4th, 2008, the judicial officer entered his decision in order dismissing the administrative petition. On that same day, February 4th, 2008, the hearing officer at the USDA prepared a cover letter addressed to Mr. Layton at his law firm address, saying here's enclosed herewith is the judicial officer's decision in order. And at the top of that page, which is at page 122 of the record, it says, Certified Receipt Requested. Now, appellants have conceded this morning that throughout the course of Mr. Layton's long practice for this agency, his office has routinely received certified mailings, I think he said at least 100 items, from the USDA hearing clerk's office without any prior issue of nonreceipt. The question, to the extent there's a due process concern here, is whether the method of service selected by the agency was reasonably calculated at the time it was sent to reach the intended recipient. Given the fact that appellants concede a long history, decades-long history of having received certified mail from this agency without a problem, it was reasonably calculated by the agency to reach Mr. Layton. But now the agency gets it back, and they know he hasn't received it. What do you do then? Well, what you do then is you post it by first-class mail, according to Jones, which is the, I'm sorry, Your Honor. Well, if you know he's not going to get it within the 20-day period, is that fair? We expect a little more of our government sometimes than they deliver. Well, you know, appellants have asked that the Court find that the hearing clerk be required to – is it fair? Yes, in the large context. The appellants have asked the Court to determine that the hearing clerk's office is required to serve notice on his office by fax or by e-mail, but the courts have repeatedly held that certified mail is an appropriate – is an appropriate means of providing notice. Well, I would agree with that. But here, it's come back. They know he hasn't received it. And they know that they understand there's 20 days. Well – What's then reasonable for them to do? In fact, by the time it came back, as appellants noted this morning – It's already too late. It's already too late. Could the department not have served it on him in the first place? In other words, would we have a due process issue? The – I don't know if it was an ALJ. Whoever entered the order from the Department of Agriculture's proceeding enters an order, and it just sits there. No notification is sent out. No certified mail. No nothing. Suppose that had been the fact of this case. Is your position still the same? I think that would be a different case, Your Honor. That would, in fact, violate the department's own regulations. So what does the department's regulations say about this? That the hearing clerk will serve orders on – upon the parties. Say will serve? Yes. We know there wasn't service. What tells us that an envelope that doesn't arrive qualifies as service under the department's regulations? Well, the department's regulations say that evidence of service can be a certified mail receipt or – There wasn't one. – can be an entry in the administrative docket indicating that the mail was sent. So we have the service requirement satisfied by the fact the mail was sent. Are we supposed to disregard the affirmative evidence that appears to be undisputed that the mail was not received but, in fact, was returned to the department so that the department knew that it had not been received? It gets to be difficult to accept that proposition that this is effective service when the department knows better. Well, what the department knew is that throughout, and at least on at least 100 occasions, it had sent certified mail. And this Court is not going to declare that certified mail is a matter of law inadequate. It's replete within the rules and statutes. But if the agency has affirmative knowledge that it failed with no indication and no suggestion that – I mean, we get people trying to avoid service. And that's part of the problem here. But if you have a factual context where there's not a glimmer of that, there's no reason to think that the appellant's trying to avoid knowledge of this. Indeed, the appellant needs knowledge of this. That's the whole problem. So why in this context should that be perceived as being effective service? The point, Your Honor, is you look at it at the time the notice, the attempt was made to provide the notice. And that would be on February the 4th when the clerk prepares a letter via certified mail. That's the point at which you judge whether the method of notice selected by the agency is reasonably calculated to reach the recipient. On February 4th, 2008, there was no indication to the agency that a certified mailing would not reach Mr. Layton. In fact, as he's pointed out, that method had been effective on many, many occasions. And, in fact, at no prior point had it not been effective. We understand all this. Is there a procedure where the agency can reenter its order? We sometimes ask the district court to reenter a judgment so that the appeal can be timely and proceed. Is there anything that would allow the agency to reenter its order with a new date? Your Honor, if there is such a procedure, I'm not aware of it. It was the appellant's burden at the district court to demonstrate to the court that it had a basis for jurisdiction over this claim. And the appellant's identified three possible statutory bases, neither one of which provided the court with the basis for jurisdiction. The first was Section 608C.15, which is the provision of the Agricultural Marketing Agreement Act under which the administrative petition was filed. It says 20 days from entry, Congress has made a decision that that is the limit on jurisdiction. The second possible basis for jurisdiction was Section 702 of the APA. But that provision doesn't provide a sort of fail-safe fallback provision to grant jurisdiction where another statute has limited jurisdiction. The final basis that was suggested by appellants at the district court level was the Little-Tucker Act, which is not argued at length here, but the Little-Tucker Act doesn't apply to an action for declaratory or injunctive relief. How many of these orders get entered by the department in a given time period, month, year, whatever? I don't know, Your Honor. I mean, the suggestion given by the district court does strike me as impractical. If there's no other way to check other than phoning up, how many attorneys are going to wind up being obligated to phone the department once a week or something simply to find out what's been entered? I don't know the answer to that, but I will tell you, based on Mr. Layton's own statement this morning, that he's practiced in front of this agency for 20-plus years and has never had an instance arise where he didn't receive notice of a hearing. Well, you know, life is unfair, but I suspect telling his client exactly what happened in this case could not have been a very pleasant conversation. And from the perspective of his client, really hard to understand. I mean, I joke as an employee of the Federal Government that I'm from the Federal Government and I'm here to help you. But this is one of the real bad cases where somebody is going to have a perception what kind of Federal Government is this if you mean suppose if there is – suppose somebody calls in and gets told incorrectly, nothing's been entered, and so acts based upon that. I mean, the position the government has taken is that, well, it was reasonably calculated to get to them. We know it didn't, but tough beans. That's – that may be the law, but sometimes it's hard to swallow. Is the Department – I mean, obviously you're here and you have to play the hand you're dealt, but that's an awfully difficult position to want to stand up for. Well, it's – Your Honor, it's a situation in which ordinarily the process has worked. People have received the notice that they need to receive. And the Court has dealt with a very similar situation in the Stievedore case, this Court in 1994, which related to a harbor workers' compensation claim. There – the statute that provided judicial review was similar to this one except they used the word issuance instead of entry. The statute said judicial – an action for judicial review must be commenced within 60 days of issuance of the order. In that case, the administrative clerk failed to include the party, Stievedoring, in its service of the order. And Stievedoring came to the Court and said, you know, I didn't receive actual notice of this order until my 60 days had already run, which is precisely the situation we have here. And the Court said in that case that issuance means filing with the clerk and nothing more, and that the policy in favor of enforcing a statutory limit on the Court's jurisdiction is so strong that it shouldn't be overcome by administerial failure. The mining energy case that we've cited to the Court out of the Fourth Circuit is also quite similar. In that case, the clerk sent the wrong order to a party. Again, the Fourth Circuit held that statutory limit on jurisdiction has to be enforced and that the Court doesn't have, and I would argue that the Eastern District Court in this case didn't have discretion to create an exception to the limit on jurisdiction. Alito, the Court may not have and we may not have. Is the Department powerless to do anything? I mean, I've encountered maybe a half-dozen cases in my years in the Court where I really scratch my head and wonder whose government's making these decisions. Immigration cases scream out the most. But this is one where I stop and think, you know, somebody's really operating. Yeah, we go by rules, we go by expectations. Certified mail almost always works, but there's an almost in there. And if you have affirmative knowledge that it doesn't work, is the Department powerless to do anything? And even after today, and I don't expect a response to this, this is a question I think the Department really needs to take up for itself. If its position is we're a machine, we don't care what we crunch, that's its position. But if its position is, gee, we're human beings, and not as a matter of sympathy, but as a matter of fundamental fact, we know this person didn't receive notice, and the system is intended to provide a system for review, the statute clearly provides for judicial review, is there a reason that judicial review isn't provided here and that the Department doesn't try to find a way to make sure the system works the way it's supposed to, not just the way it theoretically does? Like I say, I don't expect a response to that, but that's the problem posed by this case. Well, I would ask the Department to explore what discretion it has. I don't think your government wants to be unfair, and you want to do injustice. Now, you say you don't know whether there's a procedure for reentering the judgment. I suggest that you might wish to explore that and advise this Court. I will do that, Your Honor. Let me close, but I see my time is running out. Let me close with this point. The real complaint here is with Congress. Congress knows how to set up a judicial review provision that provides that the time for seeking a review will begin to accrue from the date of actual notice. Let me cut you off. We blame Congress all the time, and for good reason. Trust me, our line of work is blaming Congress. We're dealing with a statute that makes reference to a bill in equity. I mean, it's not like they're looking at this on a current basis. So, yes, it would be great if the statute's modified. That does this appellant no good whatsoever for this case. Yeah. And I understand. I mean, your brief properly cites the Supreme Court, Bowles v. Russell. I mean, if I need any direction that tells me jurisdiction means jurisdiction, screw the consequences, I have direction. That doesn't mean that that's the direction we ought to aspire to. And this is nothing personal. I mean, you're playing the hand that you're dealt with. But if you take a step back, this is a one of the tougher ones to swallow. Unless there are further questions, I will concede the rest of my time. Thank you. Mr. Layton, you've got a few seconds. Very quickly, Your Honor. The chief administrative law judge is thinking the exact same way you are. When I called the clerk's office and said, what's up, my 20 days is gone. I just got this thing. And my notes shown on the fax cover sheet, because then they faxed it to me. When I got the real one, which is split in three, they faxed it to me, because I couldn't read the real one, because it was split in three. And you see my fax cover sheet, or their fax cover sheet at ER 121. And it says on the 7th, spoke to Diane Green on 3708. She spoke to Chief ALJ. He said clerk's office to fax notice today, which will begin my 20 days. That's what the Chief ALJ thought was the right way to do it. District court didn't think so. Government counsel doesn't think so. But here's the other thing. Yeah, I've gotten probably well over 100 things from USDA. I haven't said they've all been timely. But here's my problem, though, is the rules of practice governing proceedings under the 14A statute, when you're going after people for allegedly violating the marketing order, the time to file your, quote, bill of equity, or your complaint in district court, runs from the date of receipt. Geez, sounds good, 15A petitions. The rules of practice of USDA, yeah, Congress said 20 days from the date of decision. Their rules of practice could change that and say, if there is a fax number, use that because you only got 20 days from the date of decision. They don't have to change the rules of Congress. Change your procedure because their rules of practice governing 15A petitions says the clerk shall give notice to all the parties. Now, also on Jones versus- This isn't the case we're going to rewrite the department's regulations. If you have something to speak to the particular case in front of us, please wind it up. No, I know we're not, but here's my feeling. The alternative request I asked for the district court is to view this as an original proceeding attacking USDA's regulations as they apply to producers, Judge Wanger said, no, because 702 doesn't apply because you have another remedy. That remedy is 15A, the same remedy the judicial officer says we don't have because we don't admit basically guilt. Admit that we're handlers. So I think the court should reverse it and tell Judge Wanger he has original jurisdiction to listen to our complaints since USDA wants to defy this Court's order in Midway Farms and not give us a 15A proceeding. I'd love to bypass USDA courts. Okay. We thank you for the argument. Thank both counsel. The case just argued is submitted.
judges: Anello, Fletcher B. , Clifton